GEORGE W. FINNUP, *Appellee*, v. JOHN H. BURNSIDE, *Appellant*.

No. 17,916.

### SYLLABUS BY THE COURT.

LEASE—*Including Permit to Use National Forest Reserve Lands —Lessee Liable for Rents*.   The plaintiff owned land which was inclosed with other lands constituting a part of a national forest reserve.   The proper authorities issued a permit to him to graze a designated number of cattle upon the government land so inclosed with his own, which permit was not assignable.   The defendant leased the plaintiff's land within the pasture for grazing purposes for the season with the understanding that he was to have the benefit of the government permit so granted to the plaintiff.   He then obtained a permit to graze an additional number of cattle upon the same government land and made preparations to occupy and use the pasture, but made no use of it because of the failure of his plan to procure cattle.   The government regulations provide for forfeiting permits in case they are sold or transferred and also for the issuance of new permits where the original is abandoned by the permittee in favor of another. The defendant was not deprived of the use of the pasture by the government authorities but by his failure to obtain cattle, and is liable for the stipulated rent.   A verdict for that amount is sustained by the evidence.

Appeal from Finney district court.   Opinion filed April 12, 1913.   Affirmed.

*R. W. Hoskinson, Albert Hoskinson,* and *Edgar Foster,* all of Garden City, for the appellant.

*William Easton Hutchison,* and *C. E. Vance,* both of Garden City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action was brought to recover a sum agreed upon between the parties for the use of pasture land. The defense is based upon the alleged invalidity of the agreement because government lands situated within a national forest reserve are included in the limits of the pasture.

The plaintiff is the owner of 3920 acres of land which is fenced in with 3520 acres included in the Kansas National Forest Reserve, designated as grazing district 1, division 6. In May, 1909, a verbal agreement was made between the parties that the defendant should have the use of the pasture for the ensuing pasturage season for $800, one-half to be paid September 1 and the other half November 1 of that year. The plaintiff had in the preceding April obtained a permit from the superintendent of the reserve for grazing 270 head of cattle upon the government lands in that pasture for the season, and it seems to have been the understanding that the defendant should have the benefit of this permit. He afterwards applied for and obtained a permit from the superintendent to graze ten head of cattle on each section of government land in the pasture and was informed by the superintendent that this was allowed in addition to the fifty head per section allowed to the plaintiff, but that the grazing privilege of the plaintiff was only available for his cattle. The defendant proceeded with the preparations to use the pasture, but because of a failure to receive cattle as intended he did not do so. When the September payment was due he asked for an extension of time, still expecting to receive the cattle and use the pasture. He made no use of it because of his failure to obtain cattle, but never surrendered or indicated a purpose to surrender it, nor did the government authorities interfere with such

use, otherwise than by giving the information above stated.

The government regulations relating to forest reserves provide that permits for grazing will be granted only for the benefit of the owners of stock and will be forfeited if sold or transferred. Permits are not assignable, and abandonment in favor of another necessitates a new application. In case of abandonment and issuance of a new permit the original holder may sell his improvements to the new permittee. The defendant testified:

"I understood from Mr. Finnup that he had a permit for 50 to the section that he would allow me to use for this stock. Mr. Finnup told me he had a permit for which he paid $81, allowing him to run 50 head per section on the government land, which he would transfer to me.

"Q. That was an arrangement rather than the leasing of the land he did n't own? A. You can call it whichever you please.

"Q. If you had leased the land itself from Mr. Finnup then you would n't have needed to see anybody else about putting additional cattle on it? A. Understand I only seen about the additional number of cattle of ten per section. The fifty to the section that he had already a permit on I made no application for that he had told me he had this permit of 50 to the section for which he had paid $81, that he would allow me to use.

"Q. In both events there was no leasing of the forestry land; it can not be leased? A. No, sir.

"Q. There was no attempt on your part to lease it or Mr. Finnup to lease it to you? A. Only a transfer of this permit.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. And your failure to use it was not on account of any particular ruling of the department or Mr. d'Allemand's statement to you? A. We never got to that point.

"Q. You still held the pasture? A. Yes, sir.

"Q. And you never told Mr. Finnup that you did n't want it on account of not using it? A. I told Mr. Fin-

nup I was n't able to use the pasture during this season, and asked him for an extension of time to use it.

"Q. When was that? A. That was sometime in September.

"Q. After the first payment was due? A. Yes, sir.

"Q. Not until that time? A. No, sir.

"Q. And at that time you had n't got your cattle, any cattle there for it? A. Not at all."

The jury returned a specific finding that the land leased was "all land inside 'Finnup pasture' belonging to Geo. W. Finnup." This finding in connection with the undisputed evidence establishes the fact that the parties intended that the privately owned land in the pasture only should be leased, but with the privilege which had been granted to the plaintiff of grazing fifty head of cattle per section upon the government land. While this privilege was not assignable, its existence was recognized by the superintendent when the permit for grazing ten head to the section in addition was granted to the defendant. The regulations provided, as we have seen, how the defendant might have the benefit of the first permit through its abandonment in favor of the defendant and the issuance of a new one to him. The agreement of the parties must be construed in the light of these regulations and the attendant circumstances, and it appears reasonably certain that the defendant might have enjoyed all the benefits of his contract, and would have done so, had he not been disappointed in the arrangements he had previously made for a supply of cattle. If found necessary he could have taken out a new permit in place of the one abandoned in his favor. After the superintendent informed him of the rights of the first permittee, he did not complain that he was deprived of the use of the pasture or any part of it, but on the contrary treated the agreement as in force and asked for an extension of time. There was no interference by any one to prevent the defendant from enjoying the full benefit of his agree-

ment, and he does not seem to have anticipated any interference. When another person endeavored to secure like privileges from the plaintiff he was referred to the defendant as the holder of the lease. Both parties treated the agreement as being in force through the season and no valid reason is shown for holding otherwise.

The only alleged error argued in the appellant's brief is that the verdict is not sustained by the evidence. This contention can not be sustained.

The judgment is affirmed.